Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMAN BLAYER,<br><br>    Plaintiff,<br><br>    v.<br><br>SYNTHORX, INC., PRATIK SHAH, JAY LICHTER, VICKIE CAPPS, PETER KOLCHINSKY, LAURA SHAWVER, PETER THOMPSON, and ANDREW POWELL,<br><br>    Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Norman Blayer ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Synthorx, Inc. ("Synthorx" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of Synthorx by Sanofi and Thunder Acquisition Corp., an indirect wholly owned subsidiary of Sanofi.

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York.[1]

5.  In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.  Plaintiff is, and has been at all relevant times hereto, an owner of Synthorx common stock.

---

[1] For example, in June and September of 2019, the Company reportedly participated in two investor conferences in New York, New York. *See* Synthorx, Inc., *Events & Presentations*, https://ir.synthorx.com/events-presentations (last visited Jan. 7, 2020).

2

<.

Case 1:20-cv-00130 Document 1 Filed 01/07/20 Page 3 of 16 PageID #: 3

7. Defendant Synthorx is a biopharmaceutical company that focuses on the development of cytokine Synthorin programs for the treatment of cancer and autoimmune disorders in the United States. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol, "THOR."

8. Defendant Pratik Shah ("Shah") is the Chairman of the Board of the Company.

9. Defendant Jay Lichter ("Lichter") is a director of the Company.

10. Defendant Vickie Capps ("Capps") is a director of the Company.

11. Defendant Peter Kolchinsky ("Kolchinsky") is a director of the Company.

12. Defendant Laura Shawver ("Shawver") is the President, Chief Executive Officer, and a director of the Company.

13. Defendant Peter Thompson ("Thompson") is a director of the Company.

14. Defendant Andrew Powell ("Powell") is a director of the Company.

15. Defendants Shah, Lichter, Capps, Kolchinsky, Shawver, Thompson, and Powell are collectively referred to herein as the "Individual Defendants."

16. Defendants Synthorx and the Individual Defendants are collectively referred to herein as the "Defendants."

**OTHER RELEVANT ENTITIES**

17. Sanofi provides therapeutic solutions worldwide. Sanofi is incorporated in France with principal executive offices located in France. Sanofi's American Depositary Shares are traded on the NASDAQ under the ticker symbol, "SNY."

**SUBSTANTIVE ALLEGATIONS**

**A. Background of the Company and the Proposed Transaction**

18.     In December 2018, Synthorx completed its initial public offering.

19.     Synthorx's "proprietary, first-of-its kind platform technology expands the genetic code by adding a new DNA base pair[.]" The technology is designed to create optimized biologics, referred to as Synthorins. A Synthorin is a "protein optimized through incorporation of novel amino acids encoded by [the] new DNA base pair that enables site-specific modifications, which enhance the pharmacological properties of these therapeutics."

20.     Synthorx's lead immuno-oncology product candidate, THOR-707 is "designed to kill tumor cells by increasing CD8+ T and NK cells without causing vascular leak syndrome observed with approved recombinant IL-2 (aldesleukin)." According to Synthorx, based on its "preclinical studies, [Synthorx] believe[s] [that its] platform technology can generate a pipeline of additional therapeutics that are more effective, better tolerated or have enhanced ease of use when compared to drugs that have been engineered by other means." Synthorx had "worldwide rights to [its] Expanded Genetic Alphabet platform technology and [its] Synthorins."

21.     Further, Synthorx has stated that it is "using [its] Expanded Genetic Alphabet platform technology to develop cytokine Synthorins that target validated mechanisms of action with large market opportunities, in which existing therapies have significant drawbacks." For example, Snythorx has "designed cytokine Synthorin programs, including IL-2, IL-10 and IL-15, for the treatment of cancer, and another IL-2 Synthorin program for the treatment of AI disorders."

22.     On December 9, 2019, a press release was issued announcing that Sanofi and Synthorx had entered into a definitive agreement under which Sanofi would acquire all of the outstanding shares of Synthorx for $68.00 per share in cash. The press release states, in pertinent

4

part:

### Sanofi: Sanofi to acquire Synthorx to bolster its immuno-oncology pipeline for $2.5 Billion

December 09, 2019 01:00 ET | Source: Sanofi

**Sanofi to acquire Synthorx to bolster its immuno-oncology pipeline for $2.5 Billion**

- Proprietary immuno-oncology (IO) platform synergistic with Sanofi's existing therapeutic platforms
- Lead asset THOR-707 ("not-alpha" IL-2) being explored across multiple solid tumor types alone and in combination with immune checkpoint inhibitors and other future IO combinations
- Pre-clinical pipeline for oncology and autoimmune disorders

**PARIS and San Diego, California – December 9, 2019** – Sanofi and Synthorx, Inc. (NASDAQ: THOR), a clinical-stage biotechnology company focused on prolonging and improving the lives of people suffering from cancer and autoimmune disorders, entered into a definitive agreement under which Sanofi will acquire all of the outstanding shares of Synthorx for $68 per share in cash, which represents an aggregate equity value of approximately $2.5 billion (on a fully diluted basis). The transaction was unanimously approved by both the Sanofi and Synthorx Boards of Directors.

*"This acquisition fits perfectly with our strategy to build a portfolio of high-quality assets and to lead with innovation, as you will hear at our Capital Markets Day tomorrow, December 10. Additionally, it is aligned with our goal to build our oncology franchise with potentially practice-changing medicines and novel combinations,"* says Paul Hudson, Chief Executive Officer, Sanofi.

"*Synthorx's exceptionally novel discovery platform has already produced a molecule that has the potential to become a foundation of the next generation of immuno-oncology combination therapies. By selectively expanding the numbers of effector T-cells and natural killer cells in the body, THOR-707 can be combined with our current oncology medicines and our emerging pipeline of immuno-modulatory agents for treating cancer. Moreover, Synthorx's pipeline of engineered lymphokines has great promise not only for oncology but also for addressing many autoimmune and inflammatory diseases.* " says John Reed, M.D., Ph.D., Global Head of Research & Development at Sanofi.

*"We are grateful that Sanofi has acknowledged the value of our Expanded Genetic Alphabet platform and the potential of our pipeline of optimized therapeutics for cancer and autoimmune disorders,"* says Laura Shawver, Ph.D., President and Chief Executive Officer, Synthorx. *"Importantly, Sanofi has a portfolio of*

*therapeutics that holds incredible promise for combining with our cytokine Synthorins to benefit patients around the world. I want to thank our employees and the Sanofi organization for their relentless efforts on behalf of patients."*

**Enhancing Sanofi's Immuno-Oncology Franchise**

Synthorx's lead immuno-oncology product candidate, THOR-707, a variant of interleukin-2 (IL-2), is in clinical development in multiple solid tumor types as a single agent and in combination with immune checkpoint inhibitors. It has the potential to become the best-in-class IL-2 therapeutic for the treatment of solid tumors and demonstrate improved pharmacology, less frequent dosing, and therapeutic superiority when compared to other IL-2 compounds.

The addition of THOR-707 and Synthorx's other earlier-stage cytokine programs to Sanofi's pipeline will enhance Sanofi's position in oncology, and in immuno-oncology. We expect IL-2 to become a foundation of future IO-IO combinations as well as offering multiple combination opportunities with Sanofi's clinical and pre-clinical oncology assets, including with PD-1, CD-38, and molecules that modulate effector T-cells and natural killer cells.

\* \* \*

**Transaction Terms**

Under the terms of the merger agreement, Sanofi will commence a cash tender offer to acquire all of the outstanding shares of Synthorx common stock for $68 per share in cash for a total enterprise value of approximately $2.35 billion. The $68 per share acquisition price represents a 172% premium to Synthorx's closing price on December 6, 2019.

The consummation of the tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of Synthorx common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, a wholly owned subsidiary of Sanofi will merge with Synthorx and the outstanding Synthorx shares not tendered in the tender offer will be converted into the right to receive the same $68 per share in cash paid in the tender offer. The tender offer is expected to commence in December 2019. Sanofi plans to finance the transaction with cash on hand. Subject to the satisfaction or waiver of customary closing conditions, Sanofi expects to complete the acquisition in the first quarter of 2020.

Morgan Stanley & Co. is acting as financial advisor to Sanofi and Weil, Gotshal & Manges LLP is acting as its legal counsel. Centerview Partners LLC is acting as exclusive financial advisor to Synthorx and Cooley LLP is acting as its legal counsel.

23. On December 23, 2019, Synthorx filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

24. The Solicitation Statement, which recommends that Synthorx shareholders tender their shares to Sanofi in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Synthorx's financial projections; and (ii) the financial analyses performed by Synthorx's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion.

25. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Reasons for Recommendation; (ii) Certain Financial Projections; and (iii) Opinion of Centerview Partners LLC.

26. The tender offer in connection with the Proposed Transaction is set to expire one minute after 11:59 p.m., Eastern Time, on January 22, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Synthorx's Financial Projections

27. The Solicitation Statement omits material information concerning Synthorx's financial projections.

28. The Solicitation Statement provides that "[i]n connection with Synthorx's evaluation of the Merger, [its] management prepared certain unaudited prospective financial information for Synthorx for the calendar years 2020 through 2041 (the "Projections")."

29. The Solicitation Statement provides a summary of the Projections.

30. The Solicitation Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate EBIT; and (2) a reconciliation of all non-GAAP to GAAP metrics.

31. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders tender their shares pursuant to a tender offer, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[2]

---

[2] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Jan. 7, 2020) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures

32. The disclosure of Synthorx's projected financial information is material because it would provide Synthorx shareholders with a basis to project future financial performance of Synthorx and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by the Company and its financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

33. Accordingly, in order to cure the materially misleading nature of the Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

34. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Synthorx shareholders.

### 2. Material Omissions Concerning Centerview's Financial Analyses

35. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview.

36. The Solicitation Statement fails to disclose the following concerning Centerview's

---

misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

"*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 12.5% to 14.5%; (2) the implied terminal value of Synthorx; (3) the basis for Centerview's assumption that Synthorx's after-tax unlevered free cash flows would decline in perpetuity after December 31, 2041 at a rate of 80% year-over-year; (4) the tax savings from usage of Synthorx's estimated federal net operating losses of approximately $32.9 million as of December 31, 2018 and future losses; and (5) the number of fully-diluted outstanding shares of Synthorx as of December 6, 2019.

37. With respect to Centerview's analysis of Wall Street research analysts' stock price targets for Synthorx stock, the Solicitation Statement fails to disclose: (1) the individual price targets for Synthorx observed by Centerview in its analysis; and (2) the sources of those price targets.

38. With respect to Centerview's analysis of premiums paid in the selected precedent transactions involving early-stage biopharmaceutical companies, as set forth in "—*Summary of Centerview Financial Analysis—Selected Precedent Transaction Analysis*[,]" the Solicitation Statement fails to disclose the premiums paid in each selected transaction.

39. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Synthorx shareholders. The description of Synthorx's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Synthorx shareholders are unable to fully understand Synthorx's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available

to Synthorx shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

40. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

41. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

42. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

43. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

44. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

45. Defendants acted knowingly or with deliberate recklessness in filing or causing the

filing of the materially false and misleading Solicitation Statement.

46. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

47. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

48. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

50. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

51. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

52. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

53. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

54. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

55. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

56. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

### COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

57. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions

as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

61. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C. Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 7, 2020        Respectfully submitted,

                **HALPER SADEH LLP**

                By: /s/ Daniel Sadeh
                Daniel Sadeh, Esq.
                Zachary Halper, Esq. (to be admitted *pro hac vice*)
                375 Park Avenue, Suite 2607
                New York, NY 10152
                Telephone: (212) 763-0060
                Facsimile: (646) 776-2600
                Email: sadeh@halpersadeh.com
                    zhalper@halpersadeh.com

                *Counsel for Plaintiff*